KENJI M. PRICE #10523
United States Attorney
District of Hawaii

MARSHALL H. SILVERBERG #5111
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808)541-2850
E-mail:   Marshall.Silverberg@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 18-00059 JMS-KSC |
|---|---|---|
| Plaintiff, | ) ) ) | GOVERNMENT'S MEMORANDUM REGARDING THE ANTICIPATED DEPOSITION TESTIMONY OF MARISOL DIAZ HERNANDEZ; EXHIBITS 1-2; CERTIFICATE OF SERVICE |
| vs. | ) ) ) | |
| PETER CHRISTOPHER, | ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S MEMORANDUM REGARDING
THE ANTICIPATED DEPOSITION TESTIMONY OF
<u>MARISOL DIAZ HERNANDEZ</u>**

During a recent court hearing, the Court requested a summary of the anticipated deposition testimony of Marisol Diaz Hernandez.  The government's counsel has now met with Ms. Hernandez and the government anticipates that she will testify as described below.   Before describing Ms. Hernandez's anticipated deposition testimony, some background information would probably be useful.

**I.     Factual Background**

In October 2005, the defendant met Yasmina del Carmen Sanchez Baltodano ("Yasmina") in Nicaragua.  They started dating and moved in together in March 2006.  On December 9, 2006, Yasmina gave birth to a girl, whose initials are G.G.C.S., in Costa Rica.   The defendant and Yasmina never married.  G.G.C.S. became an American citizen by virtue of the defendant being one.

In January 2007, the defendant moved back to the United States, without Yasmina or G.G.C.S.   Six months later, the defendant informed Yasmina that he was in a new relationship in the Philippines.  In June 2007, the defendant and Yasmina went to the U.S. Embassy in Managua, Nicaragua, to try and obtain a U.S. passport for G.G.C.S.  While the passport application was pending, the defendant left Nicaragua.

In November 2007, the State Department issued the passport for G.G.C.S. The State Department delivered G.G.C.S.'s passport to Yasmina, who retained sole possession of it until she provided it to the State Department as part of their

investigation, which led to the instant criminal prosecution. The defendant never possessed G.G.C.S.'s passport and could not legally bring G.G.C.S. into the United States without it. See 22 CFR 53.1(a) ("It is unlawful for a citizen of the United States . . . to enter or depart, or attempt to enter or depart, the United States without a valid U.S. passport.").

In 2009, Yasmina began dating American Jeff Sanders, with whom she later entered into a domestic partnership relationship. Around this time, the defendant stopped making payments to Yasmina for G.G.C.S.'s child support.

In 2010, the defendant decided that he wanted to formalize his visitation rights to see G.G.C.S. However, he owed a full year of child support ($1,200) to Yasmina. Consequently, on September 10, 2010, the defendant, his representative, Yasmina, and her lawyer, Wilmer Nicolas Alerman Mendieta, all met in Mr. Mendieta's office. They reached a verbal agreement which was formalized into a written document and signed by them on September 21, 2010. It provides (as translated from Spanish) in pertinent part:

> The mother states that in the full exercise of her parental authority and pursuant to our current civil law provisions, in her capacity as the child's mother and by means of this public record, she agrees to facilitate the relationship between the father, Peter Christopher, and the minor child, and to allow him access to the minor child during those periods when he is in this country, with a view to enabling the two to maintain a parent-child relationship. **At the same time, she indicates that any time the father has visitation, it will be mandatory that either she or a person of her choosing be with the father and the child and accompany them wherever they go**

> **within Nicaragua**, and that she promises to make the child available to the father to chat with him via the internet at least twice a month when he is in the United States as a way of cooperating and showing respect for the father-child relationship.  In turn, the father promises to furnish the necessary economic support for the maintenance needs of their minor child, including recreations, health, clothing, and educational needs, and he undertakes to pay, through the Ministry of Family offices in the city of Jinotope, a sum that will initially be $125 per month in child support, **with the proviso that if, in the future, it is necessary to take minor child [G.G.C.S.] out of Nicaragua, then, _with the consent of the mother_ the appropriate authorization will be issued**, and the father authorizes as his legal representative Dr. Roger Guevara Mena, of legal age, an attorney registered with the Bar of the Supreme Court of Nicaragua, Member No. 1539, to sign on his behalf the appropriate exit authorization, which will be submitted, together with this document, to the Direccion General de Migracion y Extranjeria [Bureau of Migration and Alien Affairs].

"Extrajudicial Agreement on Father-Mother-Minor Daughter," agreed to on September 10, 2010, and signed on September 21, 2010 (Exhibit 1) (emphasis added).

      Pursuant to that written agreement, on November 10, 2010, the defendant arrived at Yasmina's residence in Diriamba, Nicaragua.  At that time, the defendant was allowed to take G.G.C.S. with him on a vacation to the coastal resort area of San Juan del Sur, Nicaragua.  Also pursuant to the written agreement, Yasmina's friend and neighbor, Marisol Diaz Hernandez, accompanied the defendant and G.G.C.S. to San Juan del Sur as G.G.C.S.'s chaperone and nanny.  Ms. Hernandez would bathe and feed G.G.C.S.  The defendant was supposed to return G.G.C.S. to Yasmina at the conclusion of the vacation.

## II. Deposition testimony of Marisol Diaz Hernandez

The government anticipates that Ms. Hernandez will testify during her deposition as follows (with more detail than stated below):

> On November 10, 2010,[1] my neighbor and friend Jazmina Sanchez hired me, or rather, asked me a favor to take care of G.G.C.S. because her father Peter was coming to Nicaragua to take her out on a trip through the country.
>
> Jasmina handed her over in Diriamba, she explained to him that I will assist G.G.C.S. then we headed to San Juan del Sur, we stayed at the Hotel "La Estacion". We moved from Diriamba to San Juan by bus.
>
> While in San Juan he (Peter) rented a motorcycle on the next day to take us where the Christ statue is located, then came back to the hotel, dined, and went to sleep. Everything was normal, and she slept with her father Peter. **On the third day at 09:00am, I bathed G.G.C.S., dressed her, and then went to take a shower. When I stepped out of the bathroom they were gone, I waited six hours and proceeded to tell her mother Jazmina. I told her what had happened and gave her everything he left. Two days later Jazmina proceeded to report it to the Police located in Diriamba, Carazo**.
>
> The agreement between me and Jazmina was that I would get paid 200 cordobas per day and only will be 3 to 5 days. He, meaning Peter, was to pay hotel expenses and food for me.

Unofficial translation of statement of Marisol Diaz Hernandez, Exhibit 2 (emphasis added) (redacted to remove G.G.C.S.'s name).

---

[1] During her earlier interviews with State Department agents, as indicated on Exhibit 2, Ms. Hernandez stated that the trip began on November 11, 2010, and not on November 10, 2010. The government anticipates that Mr. Hernandez will correct that during her deposition.

5

### III.     The relevance of Ms. Diaz's testimony

The government will prove at trial, through border records maintained by the Costa Rican government, that on November 12, 2010, the defendant entered Costa Rica via the border control located at Penas Blancas, Costa Rica.  This occurred at 11:44 a.m., which is consistent with the defendant leaving San Juan del Sur with Gloria at around 9:00 a.m. as stated by Ms. Hernandez.

The Costa Rican records also show that on November 13, 2010, at 8:15 a.m., the defendant and someone using a United States passport to one of the defendant's other daughter's, whose initials are R.M.C., departed San Jose International Airport, Costa Rica, on American Airlines Flight No. 1222.   There is no record that G.G.C.S. ever arrived or departed Costa Rica.

The records maintained by U.S. Customs and Border Protection are consistent with the Costa Rican records.  They reflect that the defendant arrived in Miami on November 13, 2010, on American Airlines Flight No. 1222 and was admitted through U.S. Customs at 12:24 p.m.  Likewise, they show that someone using the passport issued to R.M.C. also arrived in Miami on November 13, 2010, on American Airlines Flight No. 1222 and was admitted through U.S. Customs at 12:24 p.m. with the defendant.  In contrast, there is no record that G.G.C.S. was admitted to the United States on November 13, 2010 or on any other date in 2010.

6

At trial, there will be overwhelming evidence that G.G.C.S. was admitted into the United States while using the passport issued to R.M.C. This is the basis for the offense charged in count 1 of the First Superseding Indictment.

In sum, Ms. Hernandez's testimony, either via her recorded deposition or live at trial,[2] will be critically important to proving that G.G.C.S. was with the defendant on November 12, 2010, at San Juan del Sur, Nicaragua, and that they disappeared that morning. It is an important part of the evidence to prove that on November 13, 2010, the defendant furnished the U.S. passport issued to R.M.C. for the use of G.G.C.S. in allowing her enter the United States illegally.

Dated: July 9, 2018, at Honolulu, Hawaii.

Respectfully submitted,

KENJI M. PRICE
United States Attorney
District of Hawaii

By:   /s/ Marshall H. Silverberg
MARSHALL H. SILVERBERG
Assistant U.S. Attorney

---

[2] Ms. Hernandez previously had informed the government that under no circumstances was she willing to return to Hawaii to testify during the trial, once her child was born in September 2018 (her due date is actually September 29, 2018). Her position may have changed. After making the trip on July 4, 2018, from Nicaragua to Hawaii (which was Ms. Hernandez's first trip outside of Nicaragua), Ms. Hernandez now has informed the government that she would be willing to return for the trial if her newborn baby is allowed to come with her. This position, of course, could change again once the baby is born.

## CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

    Megan Kau, Esq.                              mk@megkaulaw.com

    Stand-by Counsel for Defendant
    PETER CHRISTOPHER

Served Electronically via E-Mail:

    Peter Christopher                            Peteroahu2018@gmail.com

    Pro Se Defendant

DATED:  July 9, 2018, at Honolulu, Hawaii.

                                                                /s/ Dawn Aihara