PETER CHRISTOPHER
2140 Kuhio #2006
Honolulu, Hawaii 96815
(808) 443-9814

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) CR. NO. 18-00059-JMS-KSC |
|---|---|
| Plaintiff, | ) **Memorandum in Support** |
| vs. | ) Judge: The Hon. Chief Judge Michael Seabright & Magistrate Judge Kevin Chang |
| PETER CHRISTOPHER, | ) |
| Defendant. | ) |

**Memorandum in Support**

(cover page)

4

## I. <u>Background</u>

The grand jury system has been incorporated by the Fifth Amendment as a fundamental right in the United States. It is not a right of the prosecutor to have a grand jury, although there are certain benefits to the prosecutor. It is not a right of the judiciary to have a grand jury, although there are certain benefits to the judiciary. Rather, the Fifth Amendment states "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury,.." This is a right of persons, whose innocence is to be protected from arbitrary prosecution.

In this case, it appears the grand jury process has been misused by the prosecution in order to enflame the emotions and obtain an erroneous true bill, and the secrecy is being used not to protect a grand juror or me but rather to protect the prosecution and the State Department in their immoral and backwards prosecution of me.

The State Department in this case conducted an investigation (if it could even be called that) collecting false rumors and cultural confusions. As if that were not enough of a problem, the State Department failed to keep recordings of its meetings with witnesses, during which it made the problems of false witness

statements worse by assisting the witnesses to further "trump up" their testimony to match what it wanted to see.

And what did the State Department want to see? This is what it appears to me, based on what I have seen. The State Department wanted to picture me as a bad father, a sexually depraved pervert stalker, a kidnapper, a spouse abuser. It wanted to get its chance to take vengeance and not be left behind by #MeToo. So, the State Department sought to ride in on its white horse and rearrange matters that Family Courts and families had arranged differently.

It appears, indeed, that it participated in counseling the Hawaii DHS on just that vision of me. (See Exhibit A, filed under seal.)

AUSA Marshall Silverberg may have only come onboard the train late, but he too has signed on for the ride. His original indictment, his pleadings, and his claims have called me a kidnapper. In open court, he has accused me of crimes against my ex-wife and children so heinous I will not include them in this pleading to be filed without seal.

Would these gross inaccuracies cause substantial prejudice in grand jury proceedings? It is almost certain they would, and did.

## II. **Argument**

The US Attorney's Manual states:

> In dealing with the grand jury, the prosecutor must always conduct himself or herself as an officer of the court whose function is to ensure that justice is done and that guilt shall not escape nor innocence suffer. The prosecutor must recognize that the grand jury is an independent body, whose functions include not only the investigation of crime and the initiation of criminal prosecution but also the protection of the citizenry from unfounded criminal charges. The prosecutor's responsibility is to advise the grand jury on the law and to present evidence for its consideration. In discharging these responsibilities, the prosecutor must be scrupulously fair to all witnesses and must do nothing to inflame or otherwise improperly influence the grand jurors. (9-11.010 of US Attorneys Manual)

After all, the whole point of the grand jury is to guard against arbitrary prosecution, protecting those under investigation from having their names dirtied if the grand jury does not issue a true bill, and protecting any person against prosecution without a majority of the grand jury finding probable cause. Given the secret nature of the proceedings, the prosecutor and his witnesses must seek to, and actually represent, the truth.

These grand jury proceedings, of course, take place in secret, and the transcripts are typically afforded an appropriate measure of confidentiality:

> The general rule of secrecy of grand jury proceedings is essential to its purpose. *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681

(1958). Exceptions to the general rule are few. The court may authorize disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). "The district court is vested with substantial discretion in assessing a request for disclosure under Rule 6(e)." *In re Grand Jury Proceedings*, 62 F.3d 1175, 1180 (9th Cir. 1995) (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)).
A party seeking the disclosure must show a particularized and compelling need for the disclosure that outweighs the policy of grand jury secrecy. *Dennis v. United States*, 384 U.S. 855, 870 (1996); *In re Grand Jury Investigation*, 642 F.2d 1184, 1191 (9th Cir. 1981). Unsubstantiated speculative assertions of improprieties do not supply the particular need required to outweigh the policy of grand jury secrecy. *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980).
*United States v. James*, Case No. 2:17-cr-00180-JAD-PAL, at * (D. Nev. May. 4, 2018)

Here, we confirm that the particularized need must exist and be weighed against the need for ongoing secrecy in grand jury proceedings.

The Supreme Court has stated: "prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to indict. If violations did substantially influence this decision, or if there is grave doubt that the decision to indict was free from such substantial influence, the violations cannot be deemed harmless." *BANK OF NOVA SCOTIA v. UNITED STATES*, 487 U.S. 250, 263 (1988)

That specific, grave doubt is exactly what we have here before us. It is weighed against whether any further need for secrecy exists. None does. If any grand jurors name appears, that could be redacted.

The government, predictably, has informed us that it does not intend to call Mr. Bossard at trial. Of course it does not. But if this goes to trial, I will call him at trial. And because of his extensive interactions with all the government's witnesses, his bias and incompetence (related to his interactions in more than two years on this case) will be highly prejudicial against the government. As I have indeed also already indicated to the government, I further intend to call Mr. Silverberg to testify as to Mr. Bossard's inadequate performance and capabilities in his role in this case. After all, prosecuting attorneys are known to follow their routine to call their investigator. But in this case, Mr. Silverberg says he won't. I am going to ask Mr. Silverberg, "Is it true that prosecutors typically call their investigating officer?" "Is it true that you indicated in your pleadings that you didn't want to call Mr. Bossard as a witness?" "Is it true that Mr. Bossard made errors in his investigation, and that you were in the dark about certain real facts?" "Is it true that you had to rely on Mr. Bossard's Spanish interpretations to interact with many witnesses?" "Is it true that if you planned to call Mr. Bossard, you knew you would have a heavy burden to disclose Mr. Bossard's errors in this and previous investigations?" This is

9

just one small piece of the testimony I will elicit from Mr. Silverberg if I have to go to trial. This testimony and others will show how the entire investigation and prosecution of this case was totally inverted, a case of trying to cover up for systemic and specific flaws in State Department operations, actions by the State Department and Department of Justice to throw an innocent child and responsible father under the bus.

In the meantime, I prefer to have this indictment dismissed because of the misconduct it appears occurred before the grand jury. And it should be so dismissed, because that is exactly how the government's grand jury conduct is properly characterized.

The government had an obligation to conduct a proper investigation prior to going to the grand jury. It didn't. The government had an obligation to give me the opportunity to speak directly to the grand jury. It ignored that. The government had an obligation to present a complete picture of the role of the grand jury, and the historical precedents of passport prosecutions. It didn't. The government, at the least, had the obligation to inform the grand jury that it was permitted by law to show a biased and incomplete picture of reality, and that the grand jury could not assume that they were being shown an unbiased or complete perspective even of the information available to the government. It didn't.

The Ninth Circuit holds, "Dismissal of an indictment is therefore warranted on constitutional grounds if prosecutorial misconduct has undermined the grand jury's ability to make an informed and objective evaluation of the evidence presented to it. See, e.g., United States v. Cederquist, 641 F.2d 1347, 1353 (9th Cir. 1981)" United States v. Sears, Roebuck Co., Inc., 719 F.2d 1386, 1391 (9th Cir. 1983)

The Court has the discretion, authority, and imperative to order dismissal here; and given the foregoing, in the alternative, it can also order the transcripts of the grand jury testimony, and the Hawaii DHS files (related to me, G.G.C.S., key government witnesses Milyn Christopher and Yasmina Sanchez, and this case) released to me[1], in order that I can more precisely articulate the nature of my concerns to the Court.

_____
PETER CHRISTOPHER
Dated September 20, 2018 - Honolulu, Hawaii

---

[1] This may take the form of the government needing to file a motion with Family Court for the release of these records.

11