IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>   vs.<br><br>PETER CHRISTOPHER,<br><br>                    Defendant. | CR. NO. 18-00059 DKW-KSC<br><br>ORDER GRANTING GOVERNMENT'S MOTION IN LIMINE NO. 3 (ECF NO. 169) |

## I. **INTRODUCTION**

The United States of America moves in limine to prohibit Defendant Peter Christopher ("Defendant" or "Christopher") from raising a necessity defense at trial. ECF No. 169. The government brings this motion pursuant to Federal Rule of Criminal Procedure 47 and Federal Rule of Evidence 104(a). *Id.*

On June 7, 2018, Christopher was charged by the grand jury in the First Superseding Indictment with one count of Wrongful Furnishing of Another's Passport under 18 U.S.C. § 1544 and one count of False Statement in a Passport Application under 18 U.S.C. § 1542. ECF No. 30 at 2. The First Superseding Indictment alleged that Christopher knowingly furnished his daughter R.M.C.'s passport for the use of his other daughter G.G.C.S., knowing that G.G.C.S. was not

the person for whom the R.M.C. passport was issued. *Id.* The First Superseding Indictment also alleged that Christopher knowingly made false statements in a 2016 application for a passport for G.G.C.S. *Id.* at 2-3. The parties do not appear to dispute that Christopher took his daughter, G.G.C.S. (a dual-citizen of Costa Rica and the United States), from her mother in Nicaragua, traveled with G.G.C.S. to Costa Rica, and then flew with G.G.C.S. to the United States.

The United States filed "Government's Motion *in Limine* Number 3 (prohibiting the defendant from raising a 'necessity defense' at trial)" on September 12, 2018 ("the Motion"). Although the defense opposed the Motion at the November 5, 2018 hearing, no written Opposition was filed.[1] For the following reasons, the Motion is GRANTED.

## II. DISCUSSION

"The defense of necessity is available when a person commits a particular offense to prevent an imminent harm which no available options could similarly prevent." *United States v. Arellano-Rivera*, 244 F.3d 1119, 1125-26 (9th Cir. 2001) (citing *United States v. Dorrell*, 758 F.2d 427, 430-31 (9th Cir. 1985)).

---

[1] When the government filed the Motion, Christopher was pro se with standby counsel, Megan Kau. On October 2, 2018, Ms. Kau was provisionally appointed as Christopher's counsel, and, at Ms. Kau's request, the Court continued the hearing on the Motion from October 26 to November 5, 2018. ECF Nos. 207, 227. At the November 5 hearing on the Motion, Ms. Kau represented that she was not able to file a written opposition because of the short time between the date she was appointed and the opposition briefing deadline. At no point, however, did Ms. Kau request an extension to file an opposition.

> The defendant must establish that a reasonable jury could conclude
> that (1) he was faced with a choice of evils and reasonably chose the
> lesser evil; (2) he reasonably acted to prevent imminent harm; (3) he
> reasonably anticipated a causal relation between his conduct and the
> harm to be avoided; and (4) he reasonably believed there were no
> other legal alternatives to violating the law.

*United States v. Perdomo-Espana*, 522 F.3d 983, 988 (9th Cir. 2008) (citations omitted). "If the 'defendant's offer of proof is deficient with regard to any of the four elements, the district judge must grant the motion to preclude evidence of necessity.'" *Arellano-Rivera*, 244 F.3d at 1126 (quoting *United States v. Aguilar*, 883 F.2d 662, 693 (9th Cir. 1989)); *see also Perdomo-Espana*, 522 F.3d at 989 ("Our case law is clear that a trial judge may decline to allow evidence of a necessity defense where the defendant fails to present a prima facie case.") *overruled on other grounds by Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).

As Christopher did not file a written Opposition, the Court is left with his offer of proof made at the November 5, 2018 hearing. Christopher's offer of proof was not supported by any evidence. But even accepting Christopher's November 5 representations as true, Christopher fails to establish that "he reasonably believed there were no other legal alternatives to violating the law." *Perdomo-Espana*, 522 F.3d at 988.[2]

---

[2]Although the Court has serious concerns as to whether Christopher can satisfy *any* of the elements of the necessity defense, the Court finds it unnecessary to reach the other three

3

Christopher argues that the evidence will show that G.G.C.S.'s mother was neglecting her, Nicaragua was suffering from political unrest, and Christopher took G.G.C.S. back to the United States for her welfare and safety. Christopher also argues that the evidence will show that, when he went to the State Department to ask for help in taking G.G.C.S. from Nicaragua to the United States, the State Department told him that it could do nothing. Further, Christopher argues that the evidence will show that he could not have gone to the U.S. Embassy in Nicaragua for help because of the political unrest. For all of these reasons, Christopher argues that he had no legal alternative to violating the law.

But Christopher did, in fact, have several legal alternatives. In his declaration, Supervisory Customs and Border Protection Officer ("CPBO") Scott Kikkawa ("Officer Kikkawa") attested that Christopher "had at least three legal alternatives to violating the law by misusing R.M.C.'s passport." Kikkawa Decl. ¶ 21, ECF No. 169-18. First, Officer Kikkawa stated that if Christopher had shown the CBPO documents establishing G.G.C.S.'s United States citizenship, such as a copy of her United States passport or a copy of her Consular Report of Birth Abroad, the CBPO may have allowed G.G.C.S. entry into the United States. *Id.* ¶ 22. Second, if that alternative had failed, Officer Kikkawa stated that G.G.C.S.

---

elements at this time. *See Arellano-Rivera*, 244 F.3d at 1126 (stating that evidence of necessity should be precluded if a defendant's "offer of proof is deficient with regard to *any* of the four elements" of the defense of necessity) (emphasis added).

would have been treated as an alien (rather than as the citizen that she was). As an alien, the CBPO could have then taken actions that would have allowed G.G.C.S. entry to the United States as a "parole for deferred inspection" in order for Christopher to try to provide more documentation at a later date. *Id.* ¶¶ 25-26. Third, Officer Kikkawa stated that if G.G.C.S. was not allowed entry, she would have been returned to Costa Rica, not Nicaragua, because Christopher had flown with G.G.C.S. to the United States from Costa Rica. *Id.* ¶ 27. Thus, Christopher had several reasonable legal alternatives to violating 18 U.S.C. § 1544 that could have achieved the result of removing G.G.C.S. from Nicaragua and her mother.

Without offering anything to contradict Officer Kikkawa, Christopher nonetheless argues that the legal alternatives presented by the Officer are too speculative. But the Ninth Circuit has found that even a speculative legal alternative prevents a defendant from meeting his prima facie burden. *Arellano-Rivera,* 244 F.3d at 1126. In *Arellano-Rivera,* the Ninth Circuit rejected the defendant's argument that he had no legal alternatives other than to re-enter the United States illegally after a prior deportation. *Id.* The defendant proffered that he suffered from an advanced case of AIDS and had to enter the United States to obtain treatment unavailable in Mexico. *Id.* at 1122. According to the defendant, his illegal re-entry was literally a matter of life or death. The Ninth Circuit reasoned that, notwithstanding the defendant's previous deportation from the

5

United States, the defendant could still have petitioned the Attorney General for re-entry based on his advanced medical condition. *Id.* at 1126. Notably, the Ninth Circuit also stated that, even if the success of the legal alternative was unlikely (because the defendant was a previously deported felon), the likelihood of success did not negate the viability of the legal alternative for purposes of the necessity defense. *Id.*

Moreover, here, Christopher had at least one additional legal alternative. Before attempting to gain entry to the United States, it is undisputed that Christopher and G.G.C.S. were in Costa Rica, and that G.G.C.S. was a Costa Rican dual-citizen. *See* Kikkawa Decl. ¶ 27. In other words, she was already out of the harm's way — in the form of the alleged mistreatment by her mother and Nicaragua's political unrest — postulated by Christopher. Christopher does not even attempt to explain why simply staying put in Costa Rica and attempting to obtain the relief he sought for G.G.C.S. could not have been accomplished from that position of safety. *See e.g. United States v. Ibarra*, 2013 WL 12139102, at *3 (N.D. Cal. Jan. 29, 2013) (recognizing defendant's option to seek legal immigration to another country (besides the United States) as a legal alternative, when the defendant illegally entered the United States to escape a drug trafficking organization); *United States v. Bonilla-Siciliano*, 643 F.3d 589, 591 (8th Cir. 2011) (defendant "cannot show that he lacked a reasonable, legal alternative to illegally

6

reentering the United States, because he did not exclude the option of going to a country other than the United States . . . .").

### III. CONCLUSION

Because Christopher has not shown that he reasonably believed there were no other legal alternatives to violating 18 U.S.C. § 1544, a prerequisite to establishing the defense of necessity, the Court GRANTS the government's Motion in Limine No. 3.

IT IS SO ORDERED.

Dated: November 14, 2018 at Honolulu, Hawaii.

Derrick K. Watson
United States District Judge

*United States v. Christopher*, Cr. No. 18-00059 DKW-KSC; Order Granting Government's Motion in Limine No. 3 (ECF No. 169)