IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PETER CHRISTOPHER,<br><br>Defendant. | Case No. 18-cr-00059-DKW-RT<br><br>**ORDER (1) SUSTAINING APPEAL OF ORDER DENYING APPOINTMENT OF COUNSEL, AND (2) APPOINTING COUNSEL FROM THE CJA PANEL** |

Pending before the Court is Defendant Peter Christopher's appeal of the

Magistrate Judge's May 22, 2019 order denying appointment of counsel pursuant

to the Criminal Justice Act (CJA), Dkt. No. 335.   Having reviewed the parties'

papers, the record, and the relevant legal authorities, and conducted a hearing with

respect to the appeal, the Court (1) SUSTAINS the appeal to the extent that

Defendant is found partially eligible for appointment of counsel from the CJA

panel, and (2) APPOINTS counsel from the CJA panel, pursuant to the terms set

forth below.

### RELEVANT BACKGROUND

On June 13, 2018, after being charged in a two-count first superseding

indictment, Dkt. No. 30, Attorney Megan Kau was appointed as CJA counsel for

Christopher, Dkt. No. 46. Kau continued to represent Christopher until her appointment under the CJA was terminated on November 13, 2018, after the Magistrate Judge determined that Christopher was financially able to retain private counsel ("the first CJA determination"). *See* Dkt. Nos. 246, 250. On November 28, 2018, Christopher, then proceeding pro se, filed an appeal of the first CJA determination. Dkt. No. 258.

On December 31, 2018, Christopher's appeal of the first CJA determination was withdrawn after retained counsel, Attorneys Brook Hart and Chad Enoki, appeared on behalf of Christopher. Dkt. Nos. 283, 285. After the parties were unable to reach an acceptable plea agreement, the only purpose for which Hart and Enoki had been retained, the Magistrate Judge granted Hart and Enoki leave to withdraw their representation of Christopher, but reserved ruling on whether Christopher was entitled to appointment of counsel under the CJA. *See* Dkt. No. 319.

On May 20, 2019, the Magistrate Judge conducted a hearing as to the reserved ruling on appointment of CJA counsel. Dkt. No. 322. The Magistrate Judge denied Christopher's request for CJA appointment, determining that Christopher had sufficient assets to retain private counsel ("the second CJA determination"). *Id.* In a subsequent written order, Dkt. No. 328, the Magistrate

Judge found that Christopher owned real estate with $400,000 in equity, may have an additional $200,000 in equity in a separate undeveloped property, and is paid a monthly salary of $3,750 per month by a company of which Christopher is the principal owner. The Magistrate Judge further found that the above-mentioned company had approximately $163,000 in cash on hand and registered a profit of approximately $165,000 in the fiscal years ending June 30, 2017 and 2018. The Magistrate Judge then determined that Christopher was financially able to obtain private counsel because he could sell the real estate in which he held equity and could arrange for his company to provide the company's cash to him. *Id*.

The instant matter is Christopher's pro se appeal of the second CJA determination ("the pending appeal"). Dkt. No. 335. The government has filed an opposition to the pending appeal. Dkt. No. 340. On May 30, 2019, the Court conducted a hearing on the pending appeal, during which the Court made certain findings that are now set forth in this written order.

## **LEGAL STANDARD**

The Sixth Amendment provides an accused in a criminal prosecution with the right to have the assistance of counsel for his defense. Pursuant to the CJA, when a person is "financially unable to obtain adequate representation," representation shall be provided to such a person, like Christopher, who has been

charged with a felony.   18 U.S.C. § 3006A(a).   In providing such representation,

a court may also determine that payment from the person furnished representation

is appropriate when "funds are available…."   *Id*. § 3006A(f).   A person seeking

representation under the CJA bears the burden of demonstrating that he is

financially unable to obtain adequate representation.   *United States v. Ellsworth*,

547 F.2d 1096, 1098 (9th Cir. 1976).   In addition, such a person bears the burden

of showing by a preponderance of the evidence that he is unable to reimburse the

cost of representation.   *United States v. Meyer*, 2013 WL 3353771, at *2 (D. Ariz.

July 3, 2013).

When reviewing a magistrate judge's decision on a nondispositive matter,

such as the second CJA determination, a court may "set aside any part of the order

that is contrary to law or clearly erroneous."   Fed.R.Crim.P. 59(a).

## DISCUSSION

Having reviewed the entire record, and heard the parties' arguments,

whether Christopher is able to obtain counsel comes down to his cash flow when

placed in the context of what it would take for him to obtain private counsel.   The

Court begins with the context.   Christopher has presented uncontroverted figures

from four separate and reputable criminal defense attorneys from this jurisdiction.

Each of these attorneys has represented that they would require a substantial

retainer before representing Christopher, a common arrangement in this and other jurisdictions. The retainer amounts range from $150,000 up to $350,000. In other words, before any of those four attorneys would represent Christopher privately, he would be required to immediately come up with, at a minimum, $150,000. With that reference point, the Court now turns to Christopher's finances.

As an initial matter, the Court does not doubt that Christopher has significant *assets,* including those that the Magistrate Judge has already chronicled. As far as the Court is aware, however, those assets are, for the most part, not liquid to the extent that they can be harnessed so that Christopher can presently retain private counsel. One collection of assets the Magistrate Judge properly identified was real estate with potential equity of up to $600,000. Those assets, if available, could cover any of the retainers mentioned above. The problem, however, and one that the Magistrate Judge did not address, is that making those assets available will require time for such things as retention of an agent, preparation, marketing, negotiations, and sale.[1] Real property, whether developed or undeveloped, is not sold overnight. In light of the deadlines that have been set in this case, and the

---

[1]In addition, with regard to Christopher's Big Island residence, it is uncontradicted that a tenant with a lease running through summer 2019 is present.

trial that is scheduled to begin in just over two months, the Court, thus, does not find that Christopher's potential real estate assets should be considered in weighing whether he is financially able to obtain counsel at this moment.

The other principal collection of assets that the Magistrate Judge identified was the cash in bank accounts of a company that is owned and/or controlled by Christopher. That cash amounts to approximately $163,000. Even if the Court was willing to put aside any purported liabilities of the company, and consider that all of that cash could be converted into a loan or distribution to Christopher, it would only cover the retainer of one of the attorneys Christopher has contacted. Nevertheless, one attorney is all that Christopher needs and, arguably, the cash might make private representation available. The problem, however, and one that the Magistrate Judge did not address, is that once the cash is taken from the company and given to Christopher, the company would effectively be in dissolution, with almost nothing remaining with which to finance its continuing operations. This would include the company's monthly payments to Christopher.[2] Thus, while the company's cash might be able to pay one of the

---

[2] In addition, this would, among other things, leave the company unable to cover even its documented, current liabilities, including its revolving accounts.

retainers, Christopher would have little income[3] going forward to cover, among

other things, the necessities of life.[4]   *See* Guide to Judiciary Policy, Volume 7,

Chapter 2, Part A, § 210.40.30(a) (stating that "the cost of providing the person

and his dependents with the necessities of life" should be considered in

determining whether a person's financial resources are insufficient).

As a result, the Court finds that Christopher has demonstrated his present

financial inability to obtain private counsel.   In doing so, the Court finds that the

Magistrate Judge clearly erred in finding to the contrary, including that Christopher

was financially able to obtain private counsel while providing the necessities of

life.

That being said, as mentioned, Christopher does have significant assets.

While those assets, in light of the need to provide a healthy retainer, may not be

sufficient to obtain private counsel at this time, the assets in toto are certainly

sufficient to reimburse the CJA fund for payments made to appointed counsel.

*See* Guide to Judiciary Policy, Volume 7, Chapter 2, Part A, § 210.40.40.   As a

---

[3]Christopher's only other documented income of note, beyond that coming from his company, is approximately $1,100 per month derived from a tenant.
[4]Those necessities of life include supporting five minor children, for which Christopher states he owes at least $2,150 in monthly child support.   The Court also notes that Christopher has a balance of more than $135,000 in revolving charge accounts, the monthly minimum service for which may be at least several thousand dollars.

result, the Court finds that Christopher has failed to show that he is financially unable to reimburse the cost of representation.

Therefore, having reviewed the entire record and considered Defendant's "Proposal RE Monthly CJA Deposits," Dkt. No. 348, the Court orders Christopher to make the following payments to the Clerk of this Court. Starting on June 15, 2019, and on the fifteenth day of each month thereafter, Christopher is ORDERED to pay $8,000.00 in the manner directed below. Christopher shall continue to make this monthly payment until otherwise directed by the Court. Christopher shall be responsible for the reimbursement of the CJA fund to the full extent that fees and costs are paid from the CJA fund to his appointed counsel, unless otherwise ordered by the Court. The frequency and amount of payments set forth in this paragraph may be adjusted by the Court at any time, and from time to time, based on financial information that Christopher shall be required to provide whenever requested.

Christopher shall make these payments by way of a cashier's check or money order, made payable to "Clerk of Court, District of Hawai'i." On the "memo" line of the cashier's check or money order, Christopher should put the following information: CR 18-00059 DKW United States v. Christopher; CJA Fund. Christopher may either (i) hand-deliver said cashier's check or money

order to the Office of the Clerk, District of Hawai'i, or (ii) mail the same to the following address: U.S. District Court, Hawai'i District; 300 Ala Moana Boulevard, Room C-338; Honolulu; Hawai'i; 96850-0338.   Whichever of the two delivery formats set forth above that Christopher may use, the payment shall be delivered to or arrive at the Clerk's Office no later than the fifteenth day of each month starting with June 15, 2019.

The Clerk of this Court is instructed to hold all funds deposited by Christopher pursuant to this Order in accordance with 18 U.S.C. § 3006A(f) and Section 230.40 of Volume 7, Chapter 2, Part A of the Guide to Judiciary Policy, and to reimburse the CJA fund using these deposits upon issuance of payment to appointed counsel.   After final payment is made to counsel appointed pursuant to this Order, any funds remaining that have been deposited by Christopher pursuant to this Order will be returned to him.

## CONCLUSION

For the foregoing reasons, the Court (1) SUSTAINS the pending appeal, Dkt. No. 335, to the extent that Defendant is found partially eligible for

appointment of counsel from the CJA panel, and (2) APPOINTS counsel pursuant

to the CJA as set forth herein.

IT IS SO ORDERED.

DATED: June 4, 2019 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*United States of America v. Peter Christopher;* Civil No. 18-00059 DKW-RT;
**ORDER (1) SUSTAINING APPEAL OF ORDER DENYING PPOINTMENT OF COUNSEL, AND (2) APPOINTING COUNSEL FROM THE CJA PANEL**