IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PETER CHRISTOPHER,<br><br>Defendant. | Case No. 18-cr-00059 DKW<br>Case No. 20-cv-00517 DKW-RT<br><br>**ORDER (1) DENYING REMAINING GROUNDS OF DEFENDANT'S 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE, (2) GRANTING DEFENDANT'S MOTION TO SEAL, (3) GRANTING DEFENDANT'S MOTION TO AMEND 2255 PETITION BY ADDING GROUND 14, (4) DENYING GROUND 14, AND (5) DENYING A CERTIFICATE OF APPEALABILITY** |

On November 25, 2020, Defendant Peter Christopher filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. Section 2255 (Section 2255 motion), after pleading guilty to one count of wrongfully furnishing another's passport. In the Section 2255 motion, Christopher raises multiple claims of trial court and procedural error, discovery violations, and ineffective assistance of counsel. In pleading guilty, however, Christopher both agreed not to appeal his conviction, with which he complied, or to collaterally attack the same, except for claims of ineffective assistance of counsel. In this light, having considered the Section 2255 motion and the parties' related briefing, Christopher has failed to

present any meritorious claim of ineffective assistance of counsel for purposes of the collateral review exception in his plea agreement or that would provide cause for his appeal waiver.  Therefore, as set forth herein, the Section 2255 motion (Dkt. No. 413) is DENIED.

Christopher has also moved to amend the Section 2255 motion by adding a claim of ineffective assistance of counsel (Dkt. No. 444).  While the Court finds that Christopher may amend the Section 2255 motion to add the claim challenging the performance of one of his former attorneys, Lynn Panagakos, the Court again finds that no meritorious claim of ineffective assistance of counsel exists.  Further, the Court DENIES a certificate of appealability as to all claims.  Finally, the Court GRANTS Defendant's motion to seal (Dkt. No. 438) as unopposed.

## LEGAL STANDARD

Section 2255 of Title 28 of the United States Code permits "[a] prisoner in custody under sentence of a court established by Act of Congress … [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence."  28 U.S.C. § 2255(a).  The statute authorizes the sentencing court to grant relief if it concludes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  *Id.*

2

## RELEVANT PROCEDURAL BACKGROUND

On February 19, 2019, Christopher pled guilty to Count One of the First Superseding Indictment, which charged him with wrongfully furnishing another's passport. Dkt. No. 365. On January 30, 2020, this Court sentenced Christopher to 14 months' imprisonment and 3 years of supervised release on Count One, and dismissed Count Two of the First Superseding Indictment. Dkt. Nos. 393, 395. Christopher did not appeal his conviction and sentence. Instead, on November 25, 2020, he filed the instant Section 2255 motion. Dkt. No. 413.

The Section 2255 motion raised 13 grounds for relief. The remaining[1] grounds are as follows: (1) this Court lacked "jurisdiction" over the offense to which Christopher pled guilty; (2) this Court violated Rule 11 of the Federal Rules of Criminal Procedure ("Rule 11") by failing to "understand" a January 2019 plea agreement; (3) Christopher did not receive various types of discovery from the government; (4) the grand jury process was prejudiced when the government failed to stop a witness from making "irrelevant prejudicial" comments; (5) the government breached the plea agreement used at the September 19, 2019 change of plea hearing; (6) one of Christopher's former counsel, Brook Hart, provided ineffective assistance of counsel at the February 2019 change of plea hearing; (7)

---

[1]On March 23, 2021, the Court denied without prejudice Ground Ten of the Section 2255 motion, Dkt. No. 430, after Christopher asked for that ground to be separated from the rest of the motion, *see* Dkt. No. 428.

Christopher's sentencing counsel, Salina Kanai, should have objected to one of the government's arguments at sentencing on the ground of "judicial estoppel"; (8) Christopher should be allowed to "make the affirmative defense" of "necessity"; (9) Christopher received ineffective assistance of counsel at sentencing; (11) this Court erred at sentencing; (12) there were errors with the pre-sentence investigation report ("PSR"); and (13) the prosecutor committed an "abuse of discretion" in saying that he would have sought the statutory maximum sentence if Christopher had not pled guilty.[2]  The government has filed a response in opposition to the Section 2255 motion, Dkt. No. 423, and Christopher has filed a reply in support of the same, Dkt. No. 449.

In addition, on May 12, 2021, Christopher filed a motion to amend the Section 2255 motion by adding Ground Fourteen to the same (motion to amend). Dkt. No. 444.  In Ground Fourteen, Christopher wishes to argue that another of his former counsel, Lynn Panagakos, rendered ineffective assistance in various respects.  The government has opposed the motion to amend, Dkt. No. 450, while Christopher has filed a motion for extension of time to file a reply, Dkt. No. 454.

This Order now follows.

---

[2] Christopher filed an "updated" memorandum in support of his habeas grounds after the filing of the Section 2255 motion.  Dkt. No. 415.  The Court cites to the "updated" memorandum, rather than the original one (Dkt. No. 413-1), where necessary.  The update generally is a verbatim typed transcription of the handwritten Section 2255 motion without substantive change.

## DISCUSSION

## I.   **The Section 2255 Motion**

Before addressing the remaining claims in the Section 2255 motion, the

Court begins by observing certain general procedural matters.  First, as mentioned

above, Christopher did not appeal his conviction or sentence.  Despite that, in most

(although not all) of the claims recited above, Christopher raises various alleged

errors that occurred during the course of his criminal case—errors that must

ordinarily be raised during a direct appeal because, as the government explains,

habeas review is not designed to be a "substitute" for an appeal.  *See* Dkt. No. 423

at 9-10 (citing, *inter alia*, *Sanchez-Llamas v. Oregon*, 548 U.S. 331 (2006)).  An

exception to this principle is if Christopher can show that his counsel rendered

constitutionally ineffective assistance of counsel.  *United States v. Ratigan*, 351

F.3d 957, 964 (9th Cir. 2003).[3]

In addition, as the government further points out, in pleading guilty,

Christopher also agreed to waive, not only his right to appeal, but also his right to

collaterally attack his conviction or sentence, except for instances of ineffective

assistance of counsel or if the Court imposed a sentence greater than the applicable

---

[3]Another exception is demonstrating actual innocence, *see Ratigan*, 351 F.3d at 964, something which Christopher's Section 2255 motion does not attempt to do.

guideline range, *see* Dkt. No. 366 at ¶ 12, which the Court did not.[4]  In essence, therefore, in this habeas proceeding, Christopher is restricted to raising *only* claims of ineffective assistance of counsel.  *See id.*

The Section 2255 motion, however, observes no such restriction, given that the vast majority of its claims, by their own language, do not concern ineffective assistance of counsel.  Nonetheless, in his reply, Christopher appears to contend otherwise, asserting that "all" of his claims "involve ineffective counsel in one way or another…."  Dkt. No. 449 at 1.  Given that Christopher is proceeding pro se, and out of an abundance of caution, the Court will attempt, where appropriate, to liberally construe each of Christopher's remaining claims as alleging ineffective assistance of counsel.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that pro se filings are held to "less stringent standards" than ones filed by lawyers).  In doing so, though, the Court declines to act as counsel for Christopher, such as by supplying arguments on his behalf.  *See Pliler v. Ford*, 542 U.S. 225, 231 (2004).

To prevail on an ineffective assistance of counsel claim, a petitioner must establish two distinct elements.  First, he must show that counsel's representation fell below an objective standard of reasonableness.  *Strickland v. Washington,* 466 U.S. 668, 688 (1984).  Second, he must show that "there is a reasonable probability

---

[4]The guideline range determined by the Court for Christopher was 10-16 months' imprisonment, *see* Dkt. No. 396, something which the 14-month sentence, thus, fell within.

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Further, when a petitioner challenges the validity of a guilty plea, the *Strickland* inquiry requires him to show, not only that his counsel's representation fell below an objective standard of reasonableness, but also that "'there is a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985)); *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("a defendant must show the outcome of the plea process would have been different with competent advice.").

1. **Ground One: "Jurisdiction"/Venue**

In Ground One, Christopher argues that this Court lacked "jurisdiction" over the offense to which he pled guilty because, when he furnished another's passport, he did so in Florida, rather than Hawaiʻi. Dkt. No. 415 at 6-8. As an initial matter, as the government explains, and Christopher tacitly acknowledges in reply, this claim does not concern *jurisdiction*, but, instead, *venue*. *See* Dkt. No. 423 at 12; Dkt. No. 449 at 3 (acknowledging that Ground One concerns a "venue question"); *see also United States v. Vilcauskas*, 2021 WL 1515535, at *2 (D. Ariz. Apr. 16, 2021). While the connection of this contention to any deficiency by counsel is, at best, tenuous, in his reply, Christopher asserts that counsel failed to move for

7

dismissal or transfer to Florida.  *See* Dkt. No. 449 at 6.  Construed in that light, Ground One does not demonstrate constitutionally ineffective assistance of counsel.

In large part, this claim (and much of the relief sought in the Section 2255 motion) is premised upon Christopher's belief that, if he had been prosecuted in Florida, he would have received a more favorable sentence.  Christopher believes this because he contends that, in the Eleventh Circuit, where Florida is located, the "vulnerable victim enhancement" is interpreted and applied more favorably from his perspective.  In support, Christopher cites *United States v. Phillips*, 287 F.3d 1053 (11th Cir. 2002).  The flaw in Christopher's argument, however, is that, since *Phillips*, the Eleventh Circuit has explained that the statement in *Phillips* upon which Christopher relies—that a vulnerable victim must be "targeted" by a defendant—was *dicta* and not the law of the Eleventh Circuit.  *United States v. Birge*, 830 F.3d 1229, 1232-33 (11th Cir. 2016).  Instead, in the Eleventh Circuit, the vulnerable victim enhancement is applicable when the defendant "knew or should have known that a victim of the offense was a vulnerable victim," precisely the standard applied at sentencing here.  *Id*. at 1233 (citing U.S.S.G. §3A1.1(b)).  Because it was (and still is) "inconceivable" to this Court how Christopher's children—at ages two and four—could not be considered vulnerable victims, *see* 1/30/20 Sent. Tr. at 13:10, Dkt. No. 408, he was, thus, not prejudiced by having

this case brought in Hawai'i as opposed to Florida. *See United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994) (concluding that a district court did not err in declining to vacate a sentence based upon counsel's alleged failure to challenge venue because there was no showing of prejudice).[5]

### 2. <u>Ground Two: Alleged Rule 11 Violations</u>

In Ground Two, Christopher argues that this Court committed various violations of Rule 11 during a February 11, 2019 hearing on a proposed memorandum of plea agreement ("the February 2019 MOPA"). Dkt. No. 415 at 9-18. First, Christopher argues that the Court improperly treated the entire agreement as binding under Rule 11(c)(1). Second, Christopher argues that the Court engaged in plea negotiations during the February 2019 hearing. Third, Christopher argues that the Court was required to accept the February 2019 MOPA. With respect to ineffective assistance of counsel, Christopher asserts that two different attorneys rendered ineffective assistance by failing to argue that he should be allowed to plead guilty pursuant to the February 2019 MOPA, apparently, irrespective of the Court's views. Each of Christopher's arguments is without merit and misconstrues the record.

First, the Court starts with Christopher's contention that the Court was

---

[5]The Court notes that, in his plea agreement, Christopher also waived any objection to venue in Hawai'i. Dkt. No. 366 at ¶ 8(h).

9

"required" to accept the February 2019 MOPA, as it is an argument that infects the entire claim. Put simply, Christopher is wrong. As an initial matter, the case to which Christopher cites for support, *In re Vasquez-Ramirez*, 443 F.3d 692 (9th Cir. 2006), is inapt here, as it involves an *unconditional plea* under Rule 11(b). *Id*. at 695-696. It cannot be disputed that Christopher did not enter (or try to enter) an unconditional plea at the February 2019 hearing. Rather, the Court was presented with a plea *agreement* under Rule 11(c). Further, to the extent Christopher contends that some provision in Rule 11(c) required this Court to accept the February 2019 MOPA, he is again wrong. There is simply nothing in Rule 11(c) that requires a court to accept any and all plea agreements like the February 2019 MOPA, which Christopher characterizes as a Rule 11(c)(1)(B) agreement. *See United States v. Navarrete*, 697 F. App'x 530, 531 (9th Cir. Sep. 14, 2017) (concluding there was no error in the district court rejecting the defendant's Rule 11(c)(1)(B) agreement); *see also United States v. Rebaya*, 805 F. App'x 516, 517 (9th Cir. May 18, 2020) (finding no plain error in the district court both rejecting a Rule 11(c)(1)(B) agreement and failing to offer the defendant a chance to withdraw his guilty plea). While Rule 11(c) does identify certain steps that a court must take when considering, accepting, or rejecting plea agreements, *see* Fed.R.Crim.P. 11(c)(3)-(5), nowhere does it say that a court must accept a Rule 11(c)(1)(B) agreement. Rather, in the provision concerning "Accepting a Plea Agreement," it

only states: "*If* the court accepts the plea agreement…." *Id*. 11(c)(4) (emphasis added).  Put simply, "if" does not suggest any requirement on the Court's part.

This leads to Christopher's argument that the Court treated the entire February 2019 MOPA as binding under Rule 11(c)(1)(A) or (C).  This is again wrong—the Court did not treat the entire agreement as binding.  Instead, after carefully reviewing the extraordinary provisions contained therein, including provisions that, if approved, would have placed the Court and probation in the untenable position of operating as a family/custody tribunal—something which, as the Court explained during the February 2019 hearing, went far beyond the Court's expertise or the purpose of supervised release—the Court informed the parties that it was not willing to accept the February 2019 MOPA.  *See* 2/11/19 Tr. at 2:17-3:4. Merely because the Court explained deficiencies with, *inter alia*, provisions of the agreement that Christopher characterizes as "non-binding" does not mean that the Court treated the entire agreement as binding.

Finally, the Court did not participate in plea negotiations during the February 2019 hearing.  As discussed, the Court informed the parties that it was not willing to accept the February 2019 MOPA.  The Court also provided the reasons why it was unwilling to do so.[6]  Then, after being asked a question by the

---

[6]While Christopher appears to believe that it would have been better for the Court to simply say "no," the Court disagrees that Rule 11(c)(1) prohibits the Court from providing an explanation.

prosecutor, the Court discussed a process by which *the terms the parties had agreed upon* could be enforced through a judgment of this Court. *See* 2/11/19 Tr. at 18:11-21:11.  The same is true of the prosecutor's follow-up question concerning enforcement of the length of the proposed agreement. *See id*. at 21:12-22:9.[7]  The Court's discussion of enforcement played no part in negotiating the terms of any plea agreement. *See United States v. Leon*, 302 F. App'x 721, 722 (9th Cir. Dec. 8, 2008) (explaining that a district court did not engage in plea negotiations when the court was presented with a negotiated plea agreement by the parties, indicated that it would not accept the agreement as drafted, received questions from defense counsel about how to proceed, and suggested a "possible alteration").

In this light, because Christopher cannot show any Rule 11 violation during the February 2019 hearing, he also cannot show that either of his trial counsel rendered deficient performance in failing to argue that he should be allowed to plead guilty to a plea agreement that the Court would not accept.  Therefore, this claim cannot proceed.

---

[7]This is why Christopher mischaracterizes the record in contending that the Court asked the parties to "shoot [plea bargain ideas] my way…." *See* Dkt. No. 415 at 15.  As Christopher's own quote suggests, the Court did not say the words "[plea bargain ideas]."  Those words are Christopher's creation.  Instead, the Court asked the parties to "shoot" over a proposal the parties had negotiated so the Court could review the same. *See* Sent. Tr. at 29:23-30:10.  The Court said this because the prosecutor made a proposal the Court had not experienced before and, thus, the Court indicated a need to "look at" and "stud[y]" it. *See id*. at 22:2-9.

### 3.   <u>**Ground Three: Discovery**</u>

In Ground Three, Christopher argues that the government failed to provide discovery of, among other things, an alleged "impermissible motivation" for investigating him, State Department emails, communications between the government and the mother of Christopher's children, grand jury transcripts, and government documents concerning witnesses in Nicaragua.  Dkt. No. 415 at 19-22. In the Section 2255 motion, once again, the connection to any claim of ineffective assistance of counsel is, at best, tenuous.  Specifically, even though the names of two of Christopher's former attorneys are mentioned, *id*. at 21, at no point does Christopher argue that they rendered ineffective assistance with respect to discovery.  In his reply, Christopher only adds that two of his attorneys, in withdrawing motions for discovery, rendered ineffective assistance.  Dkt. No. 449 at 6.  The Court does not see why.  Christopher provides no explanation why either of his counsel performed deficiently in deciding to withdraw motions for discovery while proceeding down different avenues to obtain the most favorable result for him.  On the scant record before the Court, there appears no reason to second-guess counsels' decisions.  For example, while the Section 2255 motion suggests some form of "impermissible motivation" in investigating Christopher, it is based on nothing more than speculation.  As for the other proposed discovery, Christopher provides no explanation why the same would have benefited him or,

more importantly, resulted in a different outcome in this case. Therefore, the Court finds that Christopher has not shown that counsel provided ineffective assistance with respect to Ground Three.

### 4.   Ground Four: Grand Jury

In Ground Four, Christopher argues that a "government agent" investigating his case testified before a grand jury and "repeatedly made irrelevant prejudicial comments." Dkt. No. 415 at 23. Christopher argues that the prosecutor could have stopped the witness' testimony, but, instead, let it continue. Christopher also observes that he filed a motion to dismiss based on alleged grand jury misconduct, notes that said motion was withdrawn, and asks the Court to "now rule on it." *Id.* at 23-24. As for ineffective assistance of counsel, the Section 2255 motion is, again, silent, mentioning only that one of Christopher's former counsel, Lynn Panagakos, withdrew a motion to dismiss. In his reply, Christopher appears to assert that "the grand jury ground" "implicate[s]" a decision by Panagakos where she failed to consider the purportedly different standard in the Ninth Circuit for vulnerable victims. Dkt. No. 449 at 6.

As with the prior claim, Ground Four is without merit, not the least because Christopher fails to explain how his counsel rendered ineffective assistance. First, the vulnerable victim enhancement discussed above in Ground One has no relationship to any alleged grand jury misconduct. Therefore, it cannot be a basis

for allegedly deficient performance as it relates to Ground Four.  Second, while

Christopher never makes the argument, to the extent (like in Ground Three) he

contends that counsel was deficient in withdrawing his motion to dismiss, there is

no basis in the record to support any such argument.  While Christopher

conveniently ignores the procedural history of his motions to dismiss, it is

noteworthy that the Court **denied** a motion to dismiss based upon grand jury

misconduct prior to the filing of the motion to dismiss that was withdrawn by

counsel.  There is simply nothing in that second motion to dismiss that can support

any assertion that counsel performed deficiently in withdrawing the same in light

of the procedural history of this case.  Therefore, the Court denies Ground Four.

## 5.    **Ground Five: Alleged Breach of the Plea Agreement**

In Ground Five, Christopher argues that the government breached two

separate plea agreements.  Dkt. No. 415 at 26-30.  First, Christopher argues that the

government breached a September 2019 plea agreement ("the September 2019

MOPA") by arguing for enhancements to his sentence, making statements

designed to inflame the Court, and "lobbying" the probation office to include the

vulnerable victim enhancement.  Second, Christopher argues that the government

breached the February 2019 MOPA by withdrawing from the same after the

February 11, 2019 hearing.  Once again, in the Section 2255 motion, Christopher

makes no argument that his counsel were ineffective with respect to any of the

breaches allegedly committed by the government.  In his reply, Christopher argues that Panagakos rendered ineffective assistance by failing to inform him that the government could argue for enhancements to his guideline sentencing range.  Dkt. No. 449 at 6.[8]

The Court begins, chronologically, with the February 2019 MOPA.  As discussed in Ground Two above, this Court indicated that it would not accept the February 2019 MOPA.  While the Court's reservations were with certain aspects of the February 2019 MOPA, and perhaps not every provision therein, the Court was still unwilling to accept the February 2019 MOPA *in toto*.  Therefore, pursuant to the February 2019 MOPA, the government was entitled to withdraw from the same.  *See* Dkt. No. 413-10 at ¶ 21 ("Should the Court refuse to accept this Memorandum of Plea Agreement, it is null and void and neither party shall be bound thereto.").  As such, the government did not breach the agreement by withdrawing from it, and Christopher's counsel did not render ineffective assistance by failing to object to any such withdrawal.

With respect to the September 2019 MOPA, Christopher simply mis-reads (or reads imaginary words into) the agreement.  Specifically, the sentencing

---

[8]Christopher also argues that Panagakos left him "exposed" to the vulnerable victim enhancement by not moving for dismissal or transfer to Florida of this case.  Dkt. No. 449 at 6. As explained in Ground One above, though, Christopher was no more "exposed" here than he would have been in Florida to the vulnerable victim enhancement and, thus, Panagakos did not render ineffective assistance in this regard.

stipulations provision of the agreement states, *inter alia*, that there would be a base offense level of eight and a four-level increase to the same, Christopher could request (and the government could object to) a two-level reduction for acceptance of responsibility, and the "[g]overnment reserves the right to move for an upward departure and/or an upward variance and seek a term of imprisonment of no more than 24 months." Dkt. No. 366 at ¶ 10. In other words, nothing in the September 2019 MOPA restricted the government from arguing for a sentence "of no more than 24 months[,]" which is precisely what the government did, *see* Sent. Tr. at 26:4. The Court also rejects any argument that the government somehow violated the September 2019 MOPA by "inflam[ing]" the Court or questioning the mother of the child at the center of the passport misuse in this case. Notably, Christopher points to no provision of the agreement that was breached by any of the foregoing. In this light, because the government did not breach the September 2019 MOPA, Christopher's counsel could not have been ineffective in failing to object to a non-existent breach.

Christopher does not contend otherwise. Instead, he argues that Panagakos failed to inform him that the government could argue for enhancements to his guideline sentencing range after the removal of a provision−provision 10(f)−from

the September 2019 MOPA.[9]  As an initial matter, the foregoing argument is not

one made in the Section 2255 motion and has nothing to do with attorney

assistance in the context of the government's purported breach of the September

2019 MOPA.  As such, the government has not been provided with an opportunity

to respond to the same.  Nonetheless, it is without merit and, thus, the Court

addresses it herein without further briefing.  As Christopher appears to tacitly

acknowledge, provision 10(f) was removed from the September 2019 MOPA

*because Christopher asked for it to be removed.  See* Dkt. No. 415 at 27.

Christopher made this request because he "wanted to be able to argue for any

applicable reductions to the base guidelines range[,]" even though Panagakos "said

it didn't make any difference because no points reductions would apply…." *Id*.  At

no point in his briefing has Christopher asserted that, had he received different

advice, he would have given up the opportunity to "argue for any applicable

reductions…."  The Court rejects any suggestion that provision 10(f) would have

remained in the September 2019 MOPA in the event Christopher had received

other advice.[10]  Therefore, the Court finds that counsel did not provide ineffective

---

[9]Provision 10(f) provided that: "The parties agree not to seek any other increases or decreases in the total offense level."  Dkt. No. 423-1 at ¶ 10(f).

[10]The Court adds that there was no prejudice here from the government being able to argue for an increase in Christopher's offense level.  As the parties acknowledged in the September 2019 MOPA (and in the version of the agreement containing provision 10(f)), the Court was not bound by any stipulation between the parties, such as a stipulation not to seek an increase or decrease in the offense level.  *See* Dkt. No. 366 at ¶ 11; Dkt. No. 423-1 at ¶ 11.  In other words, even if *the parties* could not seek changes to the offense level, *the Court* could make changes to the same.

assistance with respect to Ground Five.

### 6.    <u>Ground Six: Ineffective Assistance of Attorney Brook Hart</u>

In Ground Six, Christopher directly raises a claim of ineffective assistance of counsel.  He argues that his former attorney Brook Hart rendered ineffective assistance at the February 11, 2019 hearing by failing to object to the Court's "commentary" regarding the February 2019 MOPA.  Dkt. No. 415 at 31.  Ground Six, in other words, is much the same as Ground Two, concerning the Court's purported Rule 11 violations, repurposed in the guise of ineffective assistance of counsel.  As the Court discussed in Ground Two, however, there were no Rule 11 violations committed at the February 11, 2019 hearing.  Therefore, counsel could not have been ineffective in failing to object to any such non-existent violation.  Further, as the Court has explained at various points herein, counsel was also not ineffective in failing to "push through" with the February 2019 MOPA, given that this Court would not allow the agreement to be pushed through.[11]  Therefore, the Court finds that counsel did not provide ineffective assistance with respect to Ground Six.[12]

---

One such change would have been the vulnerable victim enhancement, given that, as the Court explained at sentencing, it was "inconceivable" Christopher's two daughters were not vulnerable victims.  Sent. Tr. at 13:10-12.

[11]Christopher also faults his attorney for allowing the government to call his conduct "kidnapping."  Dkt. No. 415 at 31.  No explanation is provided, however, describing how any such failing prejudiced Christopher.

[12]In a separate motion, Christopher moves to seal three paragraphs (numbers 7, 11, and 12) of the declaration by Attorney Hart that was submitted by the government.  Dkt. No. 438.  No

### 7.   **Ground Seven: Government Estoppel**

In Ground Seven, Christopher argues that the government should have been "estopped" from taking a position at sentencing−related to his conduct in Nicaragua−that he characterizes as "mutually exclusive" from a position the government took in opposing his effort to use a necessity defense in this case.  Dkt. No. 415 at 33.  Christopher further asserts that his sentencing counsel, Salina Kanai, should have objected to the government's sentencing argument on this basis.  *Id*. at 34.

Christopher is mistaken that the positions taken by the government regarding Christopher's conduct in Nicaragua were "mutually exclusive" or otherwise inconsistent−they were not.  On one hand, in opposing Christopher's proposed necessity defense, the government argued that the purported harms to Christopher's daughter in Nicaragua were irrelevant to whether it was necessary for Christopher to commit the crime charged in Count One.  Dkt. No. 169-1 at 14-22.  On the other hand, at sentencing, the government argued that Christopher's conduct in taking his daughter from her mother in Nicaragua and bringing her to the United States was relevant to whether an upward departure or variance was

---

opposition to the motion to seal has been filed and the time to file any has now passed.  *See* Local Rule 5.2(c).  As a result, the Court GRANTS the motion to seal as unopposed.  Because the government filed the pertinent exhibit, the government is ORDERED to file an unsealed copy of Attorney's Hart's declaration with paragraphs 7, 11, and 12 restricted from view and the Clerk is instructed to SEAL Dkt. No. 423-4.

warranted.  Sent. Tr. at 24:18-26:8; *see also* Dkt. No. 388 at 11-13.  Those are not two inconsistent positions.  Put simply, an issue can be irrelevant to one matter (like a legal defense) while being relevant to an entirely different matter (like sentencing) in the same case−there is nothing groundbreaking about that and, thus, would have provided no basis for counsel to object at sentencing to the government's argument.  Therefore, the Court finds that counsel did not provide ineffective assistance with respect to Ground Seven.

### 8.    **Ground Eight: Necessity Defense**

In Ground Eight, Christopher asserts that he filed a motion for reconsideration−of the Court's order granting the government's motion to exclude the necessity defense−and the reconsideration motion was subsequently withdrawn.  Dkt. No. 415 at 35.  Christopher also incorporates the merits of the reconsideration motion into his Section 2255 motion, and then discusses how he would like to present the necessity defense to a factfinder.  *Id*.  In his reply, Christopher explains that the reconsideration motion contains a description of how counsel allegedly rendered ineffective assistance with respect to his necessity defense.  Dkt. No. 449 at 11.

Giving Christopher the widest latitude, the Court has reviewed his pro se motion for reconsideration.  Assuming for present purposes that a claim of

ineffective assistance of counsel can be construed from the same,[13] Christopher cannot succeed on any such claim because he has failed to show any prejudice from the representation he received on this matter. Notably, review of the reconsideration motion reflects that it is based upon the same principles and arguments that the Court considered (and rejected) in ruling on the government's motion to exclude. Christopher once again argued that he purportedly felt compelled to remove his daughter from her mother's care abroad, he purportedly felt that he had no alternatives to doing so, he purportedly would not have received any assistance from U.S. authorities in trying to help his daughter, and he was right to have done what he did. *See generally* Dkt. No. 272 at 23-28. As the Court explained in granting the government's motion to exclude, however, even if the success of a legal alternative was unlikely, the viability of such an alternative was not negated for purposes of the relevant analysis. Dkt. No. 251 at 6. Therefore, the Court denies Ground Eight.

### 9.   <u>Ground Nine: Ineffective Assistance of Attorney Kanai</u>

In Ground Nine, Christopher argues that he received ineffective assistance of counsel at sentencing when his attorney, Kanai, failed to make various arguments

---

[13]More specifically, it appears that, in the reconsideration motion, Christopher asserted that his counsel at the time of the government's motion to exclude, Megan Kau, rendered ineffective assistance. *See* Dkt. No. 272 at 3-6.

and/or present certain evidence. Dkt. No. 415 at 36-39. [14]  More specifically, Christopher contends that Kanai should have "presented the true history of 2010 and the following years[,]" explained the conditions his daughter experienced in 2010 and that her mother (Yasmina) said she could "go with" Christopher when she was three, presented evidence of the dysfunctional Nicaraguan legal system, shown that Christopher did not kidnap or abduct his daughter under Nicaraguan law, presented evidence that the U.S. State Department suggested Yasmina should get an arrest warrant and Yasmina had previously attempted to obtain a fraudulent birth certificate for their child, presented evidence of the importance of a "child having the stability of their own parent[,]" and objected to the PSR for failing to identify various grounds for downward departure, including a failure to cross-examine U.S. probation officers. *Id*.  Christopher asserts that Kanai's performance resulted in a "significantly harsher sentence…." *Id*. at 39.

Christopher is, again, mistaken that he received ineffective assistance of counsel.  The running theme in all of the foregoing matters that Christopher contends Kanai should have presented is Christopher's belief that it was in the "best interest" of his daughter for him to break U.S. law by misusing the passport of another one of his daughters. *See* Dkt. No. 449 at 8.  Christopher appears to

---

[14]In the Section 2255 motion, Christopher refers to his sentencing counsel as "Mrs. Althof."  The Court notes that, in her declaration, Kanai clarified that her last name has changed from Althof to Kanai and, thus, the Court uses the latter herein.

believe that, if Kanai had simply presented more evidence or argument along those lines, the Court would have "significantly" reduced his sentence.  He is very wrong.  Rather, as the Court explained at sentencing, *the reason* Christopher received the sentence he did was because he took the law into his own hands when he decided that he should be the sole arbiter of his child's best interests:

> It gives me no joy to impose this sentence [of 14 months' imprisonment] because in some ways I feel like I'm sentencing your daughter, and she's, if anything, gone through more than any 13-year-old girl ought to have at this point in her life. I cannot allow this kind of thing to go on in our society. A slap on the wrist, a four-month sentence, which is what I think a four-month sentence would represent, sends precisely the wrong message to anyone else who might be thinking of doing something similar to what you did. And it doesn't require reaching out to Nicaragua or halfway around the world to do that, but simply reaching out to the next neighborhood or the next street here in Hawaii.

> One could do exactly the same thing for the same reasons that you cited: I don't think she is being treated well by the parent who has custody of her, I don't think she is getting the medical attention, the educational learning experience that I wish for her. And if I allowed that to happen for every parent who thought that, as I said in my earlier remarks, I do honestly believe that chaos would result, domestic chaos. And our law enforcement authorities would essentially be responding to no other call than that.

Sent. Tr. at 55:18-56:12.

In short, if Kanai had made the arguments that Christopher wishes she had now made, Christopher would *not* have received a lesser sentence, let alone a significantly lesser one, and he may well have jeopardized the acceptance of responsibility adjustment he received (Dkt. No. 391 at 11) as a

24

result of his insistence that he was justified in taking the law into his own hands.[15]  Therefore, the Court finds that counsel did not provide ineffective assistance with respect to Ground Nine.

### 11.   **Ground Eleven: Rulings at Sentencing**

In Ground Eleven, Christopher argues that the Court made numerous erroneous rulings at sentencing.  Dkt. No. 415 at 42-44.  As with many of Christopher's habeas claims, though, he makes no argument that his counsel rendered ineffective assistance with respect to the purported errors of the Court. The purported errors themselves were not appealed and were, in any event, waived in his plea agreement.  In addition, unlike many other claims, in his reply, Christopher makes no mention of Ground Eleven.  *See generally* Dkt. No. 449.  In this light, as explained earlier, while the Court has liberally construed Christopher's arguments where those arguments have been made, the Court cannot simply create arguments of ineffective assistance out of thin air, as the Court would need to do in this instance.  Therefore, the Court denies Ground Eleven as procedurally deficient.[16]

---

[15]This is perhaps best exemplified by Christopher's assertion that Kanai should have presented evidence "about the importance of a child having the stability of their own parent in a 'family ties and responsibilities' argument." Dkt. No. 415 at 37.  It is ironic and even shocking that Christopher asserts this argument while failing to acknowledge that *he* prevented his daughter from "having the stability of their own parent" when he took his daughter from her mother's custody.

[16]For the sake of completeness, however, the Court notes that none of Christopher's arguments in this regard have any substantive merit.  First, Christopher provides no adequate explanation as to

## 12.  **Ground Twelve: PSR Issues**

In Ground Twelve, Christopher argues that "the process and result of the PSR" deprived him of due process, including the probation office's alleged failures to consider letters from the community, make sentencing comparisons with other inmates, mention that probation would have been more appropriate, and address a case in which a defendant was sentenced to probation. Dkt. No. 415 at 45.  As with Ground Eleven, Christopher never asserts that he received ineffective assistance of counsel in this regard.  In his reply, while Ground Twelve is mentioned in a heading, nowhere therein does Christopher explain how his counsel rendered ineffective assistance with respect to the matters raised in this claim. *See* Dkt. No. 449 at 6.  Therefore, because Christopher has made no showing (or even argued) ineffective assistance in this regard, the Court finds Ground Twelve

---

how the Court erred in finding Guideline 5K2.4 applicable, given the clear demonstration that his conduct involved the abduction of his daughter in order to bring her to the United States through the misuse of a passport. *See* Sent. Tr. at 45:7-46:17. Second, the Court did not "improperly" find the vulnerable victim enhancement applicable, given the very young age of Christopher's daughters at the time. *See* U.S.S.G § 3A1.1 app. note 2. Third, the Court did not err in considering Christopher's family ties or so-called "similarly-situated defendants." The Court *did* consider Christopher's family ties, explaining that those ties were, in part, what made the sentence so difficult. *See* Sent. Tr. at 54:18-55:1. Further, simply because other defendants received downward variances due to family ties, does not make those defendants "similarly situated" to Christopher. Finally, the Court did not fail to consider the "punishment" of Christopher's "pretrial release" or him being labeled a "felon." To the extent those arguments are meant to suggest Christopher should have been sentenced to less (or no) time in jail, as the Court explained at sentencing, anything along the lines of four months' imprisonment would have been a "slap on the wrist…." Sent. Tr. at 55:22-23.

procedurally deficient.[17]

### 13.   Ground Thirteen: Jury Trial

In Ground Thirteen, Christopher argues that the prosecutor stated on the record that he would seek a statutory maximum sentence of ten years' imprisonment.  Dkt. No. 415 at 46.  Christopher asserts that this "forced" him to choose between a jury trial and accepting an unconstitutionally disproportionate sentence.  *Id*.  In this final claim, as before, Christopher again fails to mention counsel, let alone explain how he received ineffective representation.  As with Ground Twelve, although Christopher mentions Ground Thirteen in a heading in his reply, at no point therein does he explain how his counsel rendered ineffective assistance in this regard.  *See* Dkt. No. 449 at 6.  Therefore, the Court finds Ground Thirteen procedurally deficient.[18]

## II.   The Motion to Amend

As an initial matter, the parties dispute whether Christopher is procedurally

---

[17]As with Ground Eleven, the Court notes that Ground Twelve is also substantively without any merit.  Among other things, at no point does Christopher explain how any of the purported failings of the PSR represent an instance of lost due process.  Nor could he.  As discussed at sentencing, all of the community letters were considered by the Court.  Sent. Tr. at 48:23-49:14.  Next, Christopher points to no "similarly situated" defendants that the Court ignored in sentencing him.  Finally, as discussed herein and at sentencing, a sentence of probation was not appropriate in this case for the numerous reasons the Court gave at sentencing.

[18]Like the previous claims, Ground Thirteen is also substantively without any merit.  Yet again, at no point does Christopher explain (or cite law supporting) the proposition that the government violates the right to a jury trial by stating that it will seek the maximum sentence *authorized* by statute.  Merely because Christopher considers such a sentence "disproportionate" is irrelevant.

entitled to amend the Section 2255 motion, given that it is undisputed that he filed the motion to amend more than a year after his judgment of conviction became final. *See* 28 U.S.C. § 2255(f)(1) (providing for a one-year period of limitation to file a motion under Section 2255); Dkt. No. 444 at 2 (conceding that the motion to amend was filed "more than one year since my judgment became final"). The parties agree, though, that, in deciding whether Christopher may amend the Section 2255 motion, the Court should consider whether the proposed new claim "relates back" to the original claims in the sense that they are "tied to a common core of operative facts." Dkt. No. 444 at 2-3; Dkt. No. 450 at 4.

In this light, the Court agrees with Christopher that his proposed claim of ineffective assistance of counsel against Panagakos relates back to his original claims. The discussion herein of those original claims perhaps indicates best why. In many of those claims, the conduct of Panagakos *is* at issue, and the Court discusses the same in addressing whether the claims have merit. While the original claims in the Section 2255 motion may not have been artfully pled, given the appeal and collateral review waivers at play here, when those claims are liberally construed in conjunction with Christopher's reply in support of the Section 2255 motion, it is evident that some of the original claims involve Panagakos' representation, as with the proposed Ground Fourteen in the motion to amend. Therefore, the motion to amend, Dkt. No. 444, is GRANTED. *Cf. Walden v.*

28

*Shinn*, 990 F.3d 1183, 1202 (9th Cir. 2021) (explaining that a habeas petition does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.").[19]

The Court turns now to address Ground Fourteen. Therein, Christopher argues that Panagakos rendered ineffective assistance by (1) failing to "forewarn" him about the vulnerable victim enhancement, (2) advising him that changes to the guidelines range "no longer tak[e] place" because sentencing in Hawaiʻi is based on the Section 3553(a) factors, (3) saying that it "doesn't matter" if provision 10(f) was deleted from the September 2019 MOPA, (4) failing to move for dismissal of Count One or transfer of the case to Florida, and (5) failing to "push forward" with a motion to dismiss Count One due to grand jury misconduct.

If most (if not all) of these arguments sound familiar, it is because they are: the Court has addressed them herein in ruling on the original claims of the Section 2255 motion. Specifically, the argument concerning dismissal of Count One or transfer to Florida was addressed in Ground One above, the argument concerning grand jury misconduct was addressed in Ground Four above, and the argument concerning provision 10(f) was addressed in Ground Five above. As explained above, Christopher cannot show prejudice and/or deficient performance by counsel

---

[19]In light of the Court granting the motion to amend, the letter the Court received on May 27, 2021 from Christopher, requesting additional time to file a reply in support of the motion to amend (Dkt. No. 454), is DENIED AS MOOT.

in any of these respects.

As for the argument that Panagakos failed to "forewarn" Christopher about the vulnerable victim enhancement, assuming that this relates to the deletion of provision 10(f), as discussed in Ground Five above, Christopher makes no argument that, if he had been so "forewarn[ed]," he would have decided to keep provision 10(f) in the plea agreement.  As mentioned, it was *Christopher* who requested the deletion of the provision in the hope he could persuade the Court to lower his base offense level.  Christopher has never stated that he would have foregone that opportunity and, therefore, the Court does not find any prejudice in this regard.

As for the claim that Panagakos gave improper advice about changes to the guideline range, as an initial matter, it is far from clear what Christopher means by "changes to the guidelines range by enhancements or reductions…."  Dkt. No. 444 at 2.  To the extent he means that enhancements or reductions to the offense level do not take place, any such advice is belied by the September 2019 MOPA where changes to the base offense level are expressly contemplated by the parties.  *See* Dkt. No. 366 at ¶ 10 (b)-(d).[20]  To the extent he means that the guideline range

---

[20]The Court notes in this regard that, in the motion to amend, Christopher asserts that he understood the government would not attempt to raise the "base guidelines above 10[.]"  Dkt. No. 444 at 2.  This is also expressly belied by the sentencing stipulations to which Christopher agreed in the September 2019 MOPA.  Notably, the parties agreed that the base offense level would be 8 and a 4-level increase would apply, resulting in an offense level of 12.  Dkt. No. 366 at ¶ 10(b)-(c).  In addition, the parties agreed that the government could oppose Christopher's

could not be changed, any such advice is also belied by the September 2019 MOPA, given that the parties agreed that the government could move for an upward departure or variance, and it was up to the Court to determine the sentence. *Id*. at ¶ 10(e).[21]  In addition, Christopher also fails to show prejudice by failing to state that he would not have pled guilty if he had been given "correct" advice by Panagakos.  *See Hill*, 474 U.S. at 60 (concluding that the petitioner failed to show prejudice under *Strickland* by failing to allege that he would have pleaded not guilty and insisted on going to trial if he had been advised correctly).[22]  Therefore, the Court finds that counsel did not provide ineffective assistance with respect to Ground Fourteen.[23]

## **EVIDENTIARY HEARING**

---

request for a two-level reduction to the offense level.  *Id*. ¶ 10(d).  In other words, if the government's opposition was successful, the parties agreed that the offense level would be at least 12, not 10.

[21]Further, to the extent Panagakos advised Christopher that sentencing "is based on the 3553a factors[,]" Dkt. No. 444 at 2, no explanation is provided as to why this was improper advice.

[22]The Court notes that Christopher has had three opportunities (the Section 2255 motion, the reply in support of the same, and the motion to amend) to so allege and has not done so on any occasion.

[23]Finally, the Court notes that, on May 7, 2021, the Court denied Christopher's motion to compel admissions from Panagakos, while stating that a written explanation would follow, Dkt. No. 441, which the Court now provides.  First, at the time the motion to compel was filed (and when it was denied by the Court), Christopher had not filed the motion to amend and, thus, there was no claim directly involving Panagakos in this case.  Second, even now that a claim against Panagakos has been allowed, as the government explained in its opposition to the motion to compel, Panagakos is not a *party* to this proceeding.  The pertinent Federal Rule of Civil Procedure only permits admissions requests to be directed on a party.  *See* Dkt. No. 439 at 10 (quoting Fed.R.Civ.P. 36(a)(1) ("A party may serve on any other party a written request to admit….")).

In the memorandum in support of the Section 2255 motion, Christopher appears to request an evidentiary hearing. *See* Dkt. No. 415 at 5. Pursuant to Section 2255(b), a court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief…." 28 U.S.C. § 2255(b). As the Court has detailed herein, the record conclusively shows that Christopher is not entitled to the relief he seeks in the Section 2255 motion. The Court, thus, finds that an evidentiary hearing is not warranted.

## CERTIFICATE OF APPEALABILITY

In denying the Section 2255 motion, the Court must also address whether Christopher is entitled to a Certificate of Appealability ("COA"). *See* R. 11(a), Rules Governing Section 2255 Proceedings. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met only when the applicant shows that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 483–84 (2000) (internal quotation marks omitted). In light of the findings herein, the Court concludes that reasonable jurists would not debate the resolution of the Section 2255 motion. Accordingly, the Court DENIES the issuance of a COA.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court GRANTS the motion to amend (Dkt. No. 444).  The Court DENIES all remaining grounds of the Section 2255 motion, including the Ground Fourteen added by amendment, and DENIES both an evidentiary hearing and a COA.  Christopher's motion to seal, Dkt. No. 438, is GRANTED to the extent set forth herein.

The Clerk is instructed to enter Judgment in favor of the government and then CLOSE Case No. 20-cv-00517.

IT IS SO ORDERED.

Dated:  May 28, 2021 at Honolulu, Hawai'i.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge